IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANIEL RICCARDI, *et al.*,

    Plaintiffs,
                                      Civil Action 2:21-cv-211
                                               Judge Michael H. Watson
    v.                                      Magistrate Judge Elizabeth P. Deavers

BRENDA LYNN JACKSON, TRUSTEE,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion to Quash Subpoena. (ECF No. 27.) Defendant has filed a Memorandum in Opposition (ECF No. 29), and Plaintiffs have filed a Reply (ECF No. 30). For the reasons that follow, the Motion to Quash is **DENIED**.

**I.**

This case arises in part under the Ohio Dormant Mineral Act, Ohio Rev. Code. § 5301.56, *et seq.* ("DMA"). (*See generally* Complaint, ECF No. 1.) On January 20, 2021, Plaintiffs filed a Complaint, in part seeking a declaration that they are the exclusive owners in an interest (the "Rutter Interest") in oil and gas underlying their property in Monroe County, Ohio, which was severed from the surface estate and conveyed to Charles A. Rutter in 1929. (*See id.*) Defendant is believed to be the last sole heir at law of Charles A. Rutter, and therefore is the sole holder of the Rutter Interest. (*Id.* at PAGEID # 3, ¶¶ 10-11.)

In their Complaint, Plaintiffs affirmatively allege that on or about April 17, 2012, believing that the Rutter Interest had been abandoned, they "hired attorney Richard A. Yoss . . . to determine whether any occurrences under R.C. 5301.56(B)(3) ("Saving Events") had taken

place[] in the twenty years immediately preceding the date on which the Notice of Abandonment was published and to determine whether service of the Notice of Abandonment by certified mail, return receipt requested, was possible to complete by searching the property records in Monroe County as well as the probate court records." (*Id.* at PAGEID # 4, ¶ 15.)  Plaintiffs also allege that "[a]t the time this search was conducted, [the search] did not reveal the names or addresses of Defendant or of any holders of the Rutter Interest," and they affirmatively argue that Attorney Yoss' search "is consistent with the 'baseline of reasonable diligence in identifying the holder or holders of the severed mineral interest.'" (*Id.* at ¶¶ 15-16, citing *Gerrity v. Chervenak*, 2020-Ohio-6705, 162 Ohio St. 3d 694, 166 N.E.3d 1230.)  In support, Plaintiffs attached Attorney Yoss' notes from the search to the Complaint.  (*See* ECF No. 1-5.)  Plaintiffs further allege that they "did not have any independent knowledge or information revealed by Attorney Yoss' search that would require them to continue looking elsewhere to identify or locate the holders of the Rutter Interest." (ECF No. 1 at PAGEID # 5, ¶ 17.)

In response, Defendant filed a Counterclaim, alleging in part that Plaintiffs did not comply with the DMA and that Attorney Yoss' search was not reasonable.  (*See* ECF No. 15 at PAGEID ## 97-102.)  Specifically, Defendant alleges that Plaintiffs "failed to exercise reasonable due diligence in their search for potential heirs to the Rutter Interest because they, among other things, failed to conduct any search outside of the public records of Monroe County and failed to perform any online research." (*Id.* at PAGEID # 100, ¶ 85.)  Defendant alleges that Plaintiffs "knew or should have known that Charles A. Rutter did not reside in Monroe County his entire life," and that "[a]s a result, the Plaintiffs had a duty, under Ohio law, to expand the scope of their search beyond merely the public records of Monroe County." (*Id.* at ¶¶ 86-87.)  In response to Defendant's Counterclaim, Plaintiffs deny that Attorney Yoss' search was "anything

less than what was required under Ohio law." (ECF No. 23 at PAGEID # 145, ¶ 26.)

On August 5, 2021, Defendant served Attorney Yoss with a subpoena containing the following document requests:

1. Produce a copy of all Title Searches performed on all, or any part of, the Premises.

2. Produce all Documents and Communications related to the Title Search You conducted with respect to the Premises, including but not limited to file notes, correspondence, memoranda, and e-mails.

3. Produce all Documents and Communications that you prepared on behalf of the Plaintiffs related to the Premises.

4. Produce all Documents and Communications related to the Title Search for the heirs of Charles A. Rutter or "C.A. Rutter".

5. Produce all Title Documents in your files that relate to the Premises or Charles A. Rutter.

6. Produce all Documents and Communications evidencing attorney time expended by You on behalf of the Plaintiffs, or expenses you incurred on behalf of the Plaintiffs with respect to the Premises.

7. Produce all Documents and Communications reflecting any telephone conversations or telephone messages, notes, email, and all forms of informal communication, or notations made by, for or between You and the Plaintiffs, or anyone else relative to Your legal representation of Plaintiffs with respect to the Premises.

(ECF No. 27-1 at PAGEID # 199.) Plaintiffs maintain they did not know that the subpoena had been served on Attorney Yoss until a phone conversation with counsel for Defendant on August 10, 2021. (ECF No. 27 at PAGEID # 187.) On August 12, 2021, Plaintiffs filed the subject Motion to Quash Subpoena, generally arguing that the subpoena did not comply with Federal Rule of Civil Procedure 45(a)(4) and that Defendant improperly seeks privileged documents and information. (*See generally* ECF No. 27.)

In response, Defendant argues that "[b]ecause the reasonableness of [Attorney] Yoss's search is at the heart of this dispute, [Defendant] is attempting to gather information and

documents regarding that search." (ECF No. 29 at PAGEID # 211.) Defendant also generally argues that because Plaintiffs received notice of the subpoena, Rule 45(a)(4) is not at issue, and that Plaintiffs waived any attorney-client privilege when they relied on Attorney Yoss' actions and attached his notes to the Complaint. (*Id.* at PAGEID ## 213-215.) In the alternative, Defendant argues that if the subpoena is quashed then Plaintiffs should be precluded from offering evidence that Attorney Yoss conducted a reasonable search. (*Id.* at PAGEID ## 215-216.) In their Reply brief, Plaintiffs reject Defendant's arguments and maintain that they did not receive notice of the subpoena, that they did not waive any attorney-client privilege, and that they are entitled to offer evidence that Attorney Yoss conducted a reasonable search even if the Court quashes the subject subpoena. (*See generally* ECF No. 30.) Thus, the matter is ripe for judicial review.

## II.

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Fed. R. Civ. P. 45. Rule 45 permits parties in legal proceedings to command a non-party to attend a deposition, produce documents, and/or permit inspection of premises. Fed. R. Civ. P. 45(a)(1). Upon a timely motion to quash, a court "must quash or modify a subpoena" that "fails to allow a reasonable time to comply," requires a non-party to travel more than 100 miles, "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

## III.

Because the subject Motion to Quash is related to Plaintiffs' DMA claim, the Court must first set forth the legal context for the subject dispute before it can discuss the merits of the underlying briefing.

4

Under the DMA, unless a severed mineral[1] interest is in coal or is coal related, the mineral interest is held by the United States, the state or any other political body described in the statute, or a "savings event" enumerated in Ohio Rev. Code. § 5301.56(B)(3) has occurred within the preceding 20 years, the mineral interest "shall be deemed abandoned and vested in the owner of the surface of the lands" if the surface owner has satisfied certain notice requirements. Ohio Rev. Code. § 5301.56(B). Those notice requirements are set forth in Ohio Rev. Code. § 5301.56(E):

> Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:
>
> (1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.
>
> (2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

Ohio Rev. Cod. § 5301.56(E). Critically, "[a] surface owner's failure to satisfy R.C. 5301.56(E) precludes application of the [DMA] and renders unnecessary any further analysis." *Gerrity*, 2020-Ohio-6705, at ¶ 10 (citing *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68

---

[1] "Mineral" is defined in the DMA as "gas, oil, coal, coalbed methane gas, other gaseous, liquid, and solid hydrocarbons, sand, gravel, clay, shale, gypsum, halite, limestone, dolomite, sandstone, other stone, metalliferous or nonmetalliferous ore, or another material or substance of commercial value that is excavated in a solid state from natural deposits on or in the earth." Ohio Rev. Code. § 5301.56(A)(4).

5

N.E.3d 800, ¶ 20).

The Supreme Court of Ohio recently discussed the notice requirements of Section 5301.56(E) in *Gerrity*. There, the Court concluded that "[a] surface owner attempting to comply with R.C. 5301.56(E) must exercise reasonable diligence to identify all holders of the severed mineral interest, but the inability to identify or locate all such holders does not, in itself, preclude application of the [DMA]." *Id.* at ¶ 41. The Court expressly declined to create a bright-line rule as to what constitutes "reasonable diligence," however, and instead held that "whether a party has exercised reasonable diligence will depend on the facts and circumstances of each case." *Id.* at ¶ 31.

It is against this legal backdrop that Defendant seeks information regarding Attorney Yoss' search in this case, as Defendant maintains that Plaintiffs (through Attorney Yoss) did not exercise reasonable diligence by only searching the public records of Monroe County. (ECF No. 29 at PAGEID # 211 ("Because the reasonableness of Yoss's search is at the heart of this dispute, [Defendant] is attempting to gather information and documents regarding that search."); ECF No. 15 at PAGEID # 100, ¶ 85 ("The Plaintiffs failed to exercise reasonable due diligence in their search for potential heirs to the [interest] because they, among other things, failed to conduct any search outside of the public records of Monroe County and failed to perform any online research.").) For the reasons that follow, the Court agrees that Defendant is entitled to the requested information.

## IV.

Plaintiffs seek to quash the subject subpoena for two reasons. First, Plaintiffs maintain that the subpoena is procedurally deficient because Defendant did not comply with Federal Rule of Civil Procedure 45(a)(4), which provides as follows:

6

> If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

Fed. R. Civ. P. 45(a)(4). Even assuming, *arguendo*, that Defendant did not comply with Rule 45(a)(4), the Court does not find Plaintiffs' argument to be well taken, as they have suffered no prejudice. This Court previously has held that "[t]he purpose of [the notice] provision is to provide an opposing party a chance to object to the subpoena." Plaintiffs here clearly have been able to object (and file a Reply brief in support) here.[2] *See Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 252 (S.D. Ohio 2011). Because Plaintiffs have suffered no prejudice, the Court can turn to the substantive merits of the Motion to Quash. *See McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601, at *3 (S.D. Ohio Aug. 14, 2006) ("[A]lthough there may have been some technical violation of Rule 45(b),[3] plaintiffs have not been prejudiced by that violation. In such a situation, the Court is entitled to move beyond the alleged violation of Rule 45(b) and look to the merits of the issue of whether the subpoenaed information is properly discoverable.").

From a substantive perspective, Plaintiffs seek to quash the subpoena because they argue it improperly seeks information that is covered by the attorney-client privilege. Specifically, Plaintiffs argue that "[t]o the extent that Plaintiffs exchanged communications with Attorney Yoss in order to seek his advice/representation in searching and determining title to their own property and in abandoning the Mineral Interest under R.C. 5301.56, such communications are

---

[2] On August 13, 2021, the Court ordered that Attorney Yoss was temporarily relieved of his obligation to respond to the subpoena until the Court resolved the subject Motion to Quash, further eliminating any potential prejudice to Plaintiffs. (ECF No. 28.)

[3] In 2013, the notice requirement was moved from subdivision (b) to subdivision (a)(4). *See* Fed. R. Civ. Pro. 45 advisory committee's note to 2013 amendment.

7

protected by the attorney-client privilege." (ECF No. 27 at PAGEID # 190.)  Citing Colorado law, Plaintiffs maintain that "[b]ecause Plaintiffs have not waived any privilege that applies with respect to communications between Plaintiffs and Attorney Yoss concerning his legal advice (including his title opinions), these communications remain privileged." (*Id.* at PAGEID ## 190-191.)  Also, as to Defendants' request for Attorney Yoss' billing and expense records, Plaintiffs argue that such records "may reveal the motive of Plaintiffs seeking his representation and/or the specific nature of the services he provided," and therefore are also protected by the attorney-client privilege as well.  (*Id.* at PAGEID # 191.)

In response, Defendant argues that the requested documents and information concern the same subject matter as Attorney Yoss' notes, which Plaintiffs voluntarily disclosed as an Exhibit to the Complaint.  (ECF No. 29 at PAGEID # 214.)  Defendant argues that Plaintiffs waived any attorney-client privilege by asserting that Attorney Yoss' search was consistent with the Supreme Court of Ohio's standard of reasonable diligence, and by attaching Attorney Yoss' notes.  (*Id.*)  Defendant further submits that she would be significantly prejudiced by being kept from information surrounding Attorney Yoss' search, arguing that "Plaintiffs cannot shield Defendant from obtaining the requested documentation and then use the same documentation as a sword in support of their own case." (*Id.* at PAGEID # 215.)

The attorney-client privilege is recognized as the oldest privilege relating to confidential communications.  *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).  The purposes of the privilege are to promote loyalty between lawyers and clients and to encourage full disclosure by clients to their attorneys.  *Reed v. Baxter,* 134 F.3d 351, 356 (6th Cir. 1998).  Because application of the privilege "excludes relevant evidence and stands 'in derogation of the search of the truth,'" *id.,* courts should permit application of the privilege only

8

when "necessary to achieve its purpose" and only to protect legal disclosures that "might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

As correctly highlighted by Defendant, Federal Rule of Evidence 502 applies to the disclosure of a communication or information covered by the attorney-client privilege or work-product protection. It provides in relevant part as follows:

> (a) **Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502 (bold in original). Advisory Committee notes to Rule 502 expand on the purpose of this rule by stating that "a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's notes. Further, this Court previously has held that "a party can waive the attorney client privilege [through an implied waiver] by asserting claims or defenses that put his or her attorney's advice in issue in the litigation" or by "disclos[ing] actual communications with its attorney." *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, No. 2:04-CV-0793, 2015 WL 13037026, at *2-3 (S.D. Ohio Dec. 21, 2015) (citing *Rhone-Poulenc Rarer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)).

9

To that end, it is clear that Attorney Yoss' search is a critical issue in this case, a conclusion confirmed by the fact that Plaintiffs not only expressly relied on the results of Attorney Yoss' search in the Complaint, but they also attached his notes to the Complaint. (*See* ECF No. 1 at PAGEID ## 4-5; *see also* ECF No. 1-5.) It is undeniable that Plaintiffs' disclosures were intentional, and given the significance of Attorney Yoss' search to this case, it would be unjust for the Court to prevent Defendant from reviewing other information or documents which may undermine or help explain Plaintiffs' position. *See Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *17 (S.D. Ohio Nov. 13, 2012) ("[I]t would be unfair to permit defendants to produce the final version of the ERM audit which concludes that HNCC was compliant with regulatory requirements, yet withhold the draft versions of the audit and other communications that may undermine or help explain the factual basis for this conclusion.").

The question then becomes whether the subject subpoena requests the production of documents and information which "concern the same subject matter" as the documents and information which Plaintiffs disclosed in the Complaint. Fed. R. Evid. 502(a)(2). This Court previously had held that "[a] court considering how broadly to construe the scope of a waiver of attorney-client privilege must make its decision 'depend[e]nt on the factual circumstances presented' to it." *Cooey v. Strickland*, 269 F.R.D. 643, 654 (S.D. Ohio 2010) (citing *N. Am. Rescue Prods. v. Bound Tree Med., LLC,* No. 2:08–cv–101, 2010 WL 1873291, at *11, at *32 (S.D. Ohio May 10, 2010)). Upon reviewing the factual circumstances of this case, the Court finds that requested information does concern the same subject matter as the documents and information disclosed in the Complaint. Specifically, the Court agrees that Request Nos. 1, 2, 4, and 5 seek documents and information directly related to the title search that is the subject of

Attorney Yoss' notes (which Plaintiffs attached as Exhibit 5 to their Complaint, and which directly put at issue in Paragraphs 15-17 of their Complaint), and that Request Nos. 3, 6, and 7 seek documents and information directly related to the reasonableness of Attorney Yoss' search (which Plaintiffs directly put at issue in Paragraph 16 of their Complaint). Accordingly, and because the other elements of Federal Rule of Evidence 502(a) are met, the Court finds that Plaintiffs have waived any protection over such documents and information.

The Court appreciates the significance of the attorney-client privilege and does not make this decision lightly. To be clear, while the Court agrees with Plaintiffs that "[t]he decision to retain professional legal services in connection with the pursuit of a statutory remedy, alone, does not constitute a waiver with respect to otherwise privileged communications," that is not the basis of Plaintiffs' waiver in this case. (*See* ECF No. 30 at PAGEID # 222.) Rather, Plaintiffs waived their privilege by: affirmatively alleging that they hired Attorney Yoss to perform the search; affirmatively alleging that the search was consistent with the "baseline of reasonable diligence" standard set by the Supreme Court of Ohio; affirmatively alleging that they "did not have any independent knowledge or information revealed by Attorney Yoss' search that would require them to continue looking elsewhere"; and affirmatively attaching Attorney Yoss' notes to the Complaint. (*See* ECF No. 1 at PAGEID ## 4-5.)

Plaintiffs filed this lawsuit and went well beyond the minimum pleading standards to put these matters at issue. It would pbe substantially prejudicial to Defendant to allow Plaintiffs to hide behind the allegations of their Complaint without allowing Defendant to investigate further. *Fifth Third Bancorp v. Certain Underwriters at Lloyd's*, No. 1:14-CV-869, 2017 WL 1881339, at *8 (S.D. Ohio May 9, 2017) ("[Plaintiff] cannot simultaneously rely on privileged information to prove its claims, while brandishing the 'shield' of privilege to prevent [Defendant] from

11

obtaining the same information.") (citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 41, 127 Ohio St. 3d 161, 171, 937 N.E.2d 533, 542 (recognizing "that the attorney-client privilege cannot at once be used as a shield and a sword.")).  For these reasons, Plaintiffs' Motion is not well taken.

## V.

Accordingly, because Plaintiffs have waived any attorney-client privilege over information and documents relating to Attorney Yoss' title search, the Motion to Quash Subpoena, ECF No. 27, is **DENIED**.  Attorney Yoss is **DIRECTED** to respond to the subject subpoena, *see* ECF No. 27-1, within **TWENTY-ONE (21) DAYS** of the date of this Opinion and Order.

**IT IS SO ORDERED.**

Date: September 21, 2021                     /s/ *Elizabeth A. Preston Deavers*
                                                            ELIZABETH A. PRESTON DEAVERS
                                                            UNITED STATES MAGISTRATE JUDGE